IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM LINDSEY, } | |
| } | |
| Plaintiff, } | |
| } | CIVIL ACTION NO. |
| v. } | 09-AR-0935-S |
| } | |
| UAB HEALTH SYSTEM, } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

Plaintiff, William Lindsey ("Lindsey"), a black male, instituted the above-entitled action alleging race discrimination in violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and of 42 U.S.C. § 1981 and 42 U.S.C. § 1983, against defendant, UAB Health System ("UABHS"), based solely on its decision not to hire him for certain information systems positions. Before the court is UABHS's motion for summary judgment. For the reasons that follow, UABHS's motion will be granted.

**FACTS**[1]

---

[1] Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Rule 56(c), F.R. Civ. P. In accordance with Rule 56(c), the narrative statement of facts includes facts that are undisputed by the parties. Where there is a dispute, the facts are presented in the light most favorable to Lindsey. "The movant 'bears the initial responsibility of informing the district court of the basis of its motion' by identifying those portions of the record that demonstrate the absence of genuine issues of material fact." *Baldwin County, Ala. v. Purcell Corp.*, 971 F.2d 1558, 1563 (11th Cir. 1992) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Thereafter, the burden shifts to the non-movant to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact or that the moving party is not entitled to judgment as a matter of law. *See* Rule 56(e), F.R. Civ. P.; *see also Celotex,* 477 U.S. at 324. Conclusory allegations or legal conclusions

Beginning in February 2007, Lindsey was engaged as a contract worker through Precision Resources, a temporary employment agency, in the UABHS Information Systems department. (Doc. 23-1, at ¶¶ 1-2.) Lindsey was paid by Precision Resources and directly reported to Marc Surcouf ("Surcouf") at Precision Resources. (Doc. 20, at 7.) However, Lindsey performed the same tasks that are normally assigned by UABHS to the Data Communications Tech I and II positions. (Doc. 20, at 44-45.) As part of their job responsibilities, Data Communications Tech I and II employees are dispatched to jobs to provide network and application support to the various UABHS facilities. (Doc. 20, at 45.) Although Surcouf was Lindsey's contact at Precision Resources, Martin Donohue ("Donohue"), his supervisor at UABHS, was responsible on a day-to-day basis for ensuring that the employees were aware of and were dispatched in response to reported Information Technology problems and that those problems are resolved in a timely manner. (Doc. 20, at 61.) Donohue directly reported to Chris Shepard ("Shepard"), a manager at UABHS. (Doc. 20, at 35-36.) Employees are expected to respond to jobs within thrity minutes of receiving a call or page. (Doc. 20, at 46.) If an employee does not respond to a call or page within thirty minutes, the call is considered a "missed call." (Doc. 20, at 46.) According to Shepard, speed is a necessity because of the unique exigencies of the healthcare field. (Doc.

---

are not enough. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

20, at 46.)  Supervisors communicate with employees about jobs via UABHS issued pagers or via mobile phone.  (Doc. 20, at 45-46.)  At first, Lindsey was not issued a pager.  Instead, UABHS would call him on his personal mobile phone.  (Doc. 20, at 45.)  However, Shepard testified that UABHS did issue Lindsey a pager sometime between February 2007 and September 2007 because they had "issues getting him on his cell phone."  (Doc. 20, at 47.)

On September 11, 2007, Lindsey submitted an application for a full time position with UABHS via Brass Ring, UABHS's online application system.  (Doc. 20, at 47-48; Doc. 23-3, at 1.)  Lindsey believed that he had applied for the Data Communications Tech I position.  However, Debra Daniel ("Daniel"), whom Shepard described as the liason to the UABHS human resources department (Doc. 20, at 47), informed Lindsey in a series of emails that he had only applied for the Information Services Consultants II position but that she could use his said application for the Data Communications Tech I position as well.  (Doc. 23-3, at 7.)  On or about September 17, 2007, Lindsey met with Shepard and Donohue regarding his application for the Data Communications Tech I position.  At that meeting, Shepard and Lindsey agreed that, given his level of experience and his compensation requirement, it would be more appropriate for him to apply for the Data Communications Tech II position.  (Doc. 20, at 48; Doc. 23-3, at 4.)  At that time there was no open Data Communications Tech II position.  Shepard admits

3

telling Lindsey that one would be "available in the near future." (Doc. 20, at 48.)  In an email to Shepard, following-up on their meeting, Lindsey expressed his interest in being considered for the soon-to-be-posted Data Communications Tech II position.  (Doc. 23-3, at 4.)  According to UABHS's filings with the EEOC, a Data Communications Tech II position was posted on October 15, 2007.  (Doc. 23-3, at 2.)  On December 13, 2007, Daniel sent the following email to the relevant UABHS employees:

> If you have applied for any of the HSIS positions currently posted, please let me know via reply to this message.  Several staff members have indicated to me they were interested in positions.  I need to be sure who has actually applied.
>
> Positions are posted internally for a minimum of 5 days.  If you do not apply within that 5 day period and the position is pulled, you may not be considered for the position.
>
> If you are planning to apply please do so today.  Notify me as soon as you complete the application.  Thanks.

(Doc. 23-3, at 5.)  That same day Lindsey forwarded this email to Shepard and asked whether he needed "to do anything further to apply."  (Doc. 23-3, at 5.)

Both Shepard and Donohue testified that Lindsey's responsiveness to calls and pages deteriorated between September 2007 and February 2008.  (Doc. 20, at 51-52; Doc. 20, at 67.)  Lindsey admits that on **"at least"** one occasion Shepard or Donohue spoke with him about missing a page, although he does not recall missing a page on any other occasion.  (Doc. 20, at 9.)  Each time

4

Lindsey was late or unresponsive to a page it was reported to Surkov. (Doc. 20, at 52.) Shepard testified that, based on repeated complaints, Surkov asked him if he wanted him to pull Lindsey from his assignment at UABHS, and Shepard says that he responded affirmatively. (Doc. 20, at 51.) Lindsey's connection with UABHS was terminated in February 2008. (Doc. 23-3, at 2.) On March 31, 2008, Abraham Gomez, an Hispanic male, was hired for the Data Communications Tech II position. (Doc. 23-3, at 2.)

On May 12, 2009, Lindsey, after exhausting his EEOC remedy, filed this action claiming only that UABHS's failure to hire him for either of the Data Communications Tech positions (and not the discontinuance of the contract) was motivated by impermissible racial animus in violation of Title VII, § 1981, and § 1983. Although it occurred around the same time period, Lindsey clearly does not complain that the termination of his "employment" with UABHS was racially motivated. After lengthy discovery, UABHS filed its motion for summary judgment on June 10, 2010. The parties have fully briefed the issues, and the motion is now before the court.

## ANALYSIS

Lindsey invokes Title VII, 42 U.S.C. § 1981 and 42 U.S.C. § 1983 in this action. However, when no different or additional wrongdoing is alleged, and the claims are based on the same conduct, the analysis of Title VII, § 1981, and § 1983 claims is

5

identical.  *McMillan v. Fulton County*, 352 F.App'x 329, 330 n.1 (11th Cir. 2009); *see also Butts v. County of Volusia*, 222 F.3d 891, 893-94 (11th Cir. 2000) (holding that in a case involving state actors, there is no liability under § 1981, and such claims merge into the § 1983 claims); *Abel v. Dubberly*, 210 F.3d 1334, 1338 (11th Cir. 2000) (holding that Title VII and § 1983 claims have the same elements where the claims are based on the same set of facts); *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (holding that Title VII and § 1981 claims are analyzed in the same manner).  UABHS is a governmental entity of the State of Alabama and subject to the constraints of § 1983.

A plaintiff claiming that a would-be employer's failure to hire him is based on impermissible racial discrimination has the initial burden of establishing a *prima facie* case by showing that "(1) the applicant belonged to a racial minority; (2) he applied and was qualified for the job; (3) he was rejected; and (4) after his rejection, the position remained open and the employer continued to seek qualified applicants." *Id.* n.5 (citing *McDonnell Douglas Corp.,* 411 U.S. at 802).  The *prima facie* case "raises a presumption that the employer's decision was more likely than not based upon an impermissible factor." *Richardson v. Leeds Police Dept.*, 71 F.3d 801, 805 (11th Cir. 1995) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  "The application requirement is important to establishing this presumption because

it shows that the decision-maker knew about the plaintiff and the plaintiff's interest in the position." *Walker v. Prudential Prop. and Cas. Ins. Co.*, 286 F.3d 1270, 1275 (11th Cir. 2002) (citing *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir. 1984)). It is **only** when there is no formal mechanism for persons interested in being considered for a position to communicate their interest that informal communication of that interest will suffice. *See Carmichael*, 738 F.2d at 1133.

Once a plaintiff has made out a *prima facie* case, the burden of going forward shifts to the defendant to articulate, through the introduction of admissible evidence, "a legitimate, nondiscriminatory reason for its decision." *Id.* Once the defendant has articulated a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the defendant's reason is pretextual. *Id.* "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).

The undisputed evidence demonstrates that Lindsey does not have a *prima facie* case of race discrimination with regard to the Data Communications Tech I position he applied for, because he was never rejected. (Doc. 23-3, at 4.) Instead, as UABHS argues

7

"[p]laintiff was not rejected for the Data Tech I position, but reached an agreement with Shepard that he would be more suited to a Data Tech II position." (Doc. 21, at 4.) Additionally, UABHS argues that Lindsey cannot make out a *prima facie* case of race discrimination with regard to UABHS's failure to hire him for the Data Communications Tech II position, because Lindsey cannot show that he actually applied for said position. (Doc. 24, at 2-3.) While it is true that Lindsey did not formally apply for the Data Communications Tech II position through Brass Ring (Doc. 20, at 13-15), the evidence, taken in the light most favorable to Lindsey, shows that UABHS led him to believe that it could use previous applications for multiple job postings, a sort of informal means of application. Specifically, in an email exchange between Lindsey and Daniel, Daniel indicates that she had the authority to make such an arrangement. On September 12, 2007, Lindsey sent the following email to Daniel:

> I have submitted a Brass Ring application for the Tech position. The application completed successfully so please let me know if I need to provide any more information.
> Thanks.

(Doc. 23-3, at 7.) That same day Daniel responded, saying:

> What I received on you was for applying for Information Services Consultants II. **That is ok because I can use it for Data Comm Tech I.**

(Doc. 23-3, at 7) (emphasis added). Around the same time Lindsey had a conversation with Shepard where they both agreed that the

8

Data Communications Tech II position was more suited to Lindsey's qualifications.  (Doc. 20, at 48; Doc. 23-3, at 4.)  It was upon understanding that he did not **necessarily** have to submit another formal application, after consulting with Shepard that Lindsey sent Shepard an email on December 13, 2007, asking if he needed "to do anything further to apply."  (Doc. 23-3, at 5.)  Taking into consideration all of the evidence and logical inferences therefrom, Lindsey was under the reasonable, if mistaken, belief that he need not formally apply for the Data Communications Tech II position, but instead that his application for the Data Communications Tech I position could be used.  Thus, UABHS's contention that Lindsey does not make out a *prima facie* case because he never applied for the Data Communications Tech II position is disingenuous and is rejected.  UABHS's informal practice of using one application for more than one opening makes Lindsey's informal notice of his interest in the Data Communications Tech II position sufficient to satisfy the application requirement.  It being undisputed that Lindsey belongs to a protected group, that he was qualified for the Data Communications Tech II position, and that he was passed over in favor of an applicant of a different race, Lindsey has satisfied his light burden of making out a *prima facie* case of racial discrimination.

That said, Lindsey has offered no evidence showing that UABHS's legitimate non-discriminatory reason, namely that Lindsey

had job performance issues while he worked at UABHS as a contract employees are pretextual.  Both Shepard and Donohue testified that on more than one occasion Lindsey was non-responsive or was late in responding to pages.  (Doc. 20, at 49;Doc. 20, at 67.)  According to Shepard, because of the exigencies associated with a technological support job in the healthcare field "quickness is a necessity."  (Doc. 20, at 46.)  Further, Shepard testified that Lindsey's reactions to pages continued to deteriorate between  the time the Data Communications Tech II position was posted in October 2007 until Lindsey was terminated in February 2008 (Doc. 20, at 87.)  Each time Lindsey was late in responding to a page, or was unresponsive, UABHS reported it to Surkov at Precision Resources, his real employer.  (Doc. 20, at 52.)  As Shepard testified, based on these repeated complaints Surkov asked Shepard if he wanted Precision Resources to pull Lindsey from his assignment at UABHS, and Shepard says that he said he did.  (Doc. 20, at 51.)  As UABHS notes, it would make no sense for UABHS to hire Lindsey back when only a few weeks earlier it had terminated his relationship based on performance.  (Doc. 24, at 4.)  UABHS has met its burden of asserting a legitimate, non-discriminatory reason for its decision not to hire Lindsey.

   Lindsey, on the other hand, has not come near to showing that UABHS's reason for not hiring him is pretextual.  In fact, Lindsey admits that on **"at least"** one occasion Shepard or Donohue spoke

with him about missing a page, although he does not recall missing any other pages. (Doc. 20, at 9.) Lindsey attempts to establish pretext by arguing that "conflicting testimony exists regarding plaintiff's performance between both Shepard and Donahue." (Doc. 23-1, at 8.) However, a careful reading of both Shepard's and Donahue's deposition testimony reveals no such conflict. Shepard and Donahue both testified that the problems that they had with Lindsey were related to his timeliness in responding to pages and that this was the reason it did not hire him. (Doc. 20, at 51-52; Doc. 20, at 67.) Even if it were true that inconsistencies exist in Shepard and Donahue's testimony, Lindsey offers no other evidence to suggest that UABHS's decision not to hire him was based on an impermissible racial animus. Accordingly, UABHS's motion is due to be granted.

**CONCLUSION**

For the foregoing reasons, UABHS's motion for summary judgment will be granted by separate order.

DONE this 6th day of August, 2010.

/s/ William M. Acker
_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE